IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**DORU IONEL MIHAILOVICI,**

    Plaintiff,

    v.

**WILLIAM S. SNYDER, et al.,**

    Defendants.

No. 3:15-cv-01675-MO

OPINION AND ORDER

**MOSMAN, J.**,

Pro se Plaintiff, Doru Mihailovici, brought suit against Defendants William S. Snyder, Jody Petersen, and the City of North Plains for damages arising out of Mr. Mihailovici's arrest on September 6, 2013. Defendants now move for summary judgment on all of Mr. Mihailovici's claims against them. For the reasons set forth below, Defendants' Motion for Summary Judgment [65] is GRANTED in part and DENIED in part.

## BACKGROUND

On August 27, 2013, Mr. Mihailovici was pulled over by Officer Jesse Baker. The two had a heated conversation, during which Mr. Mihailovici allegedly made several threatening statements and Officer Baker called Mr. Mihailovici "an ass." The interaction ended when Officer Baker handed Mr. Mihailovici back his license, and Mr. Mihailovici said he was going to file a complaint against the officer. Officer Baker prepared a report and told Chief William

Snyder about the incident. Mr. Mihailovici encountered Officer Baker a few days later and again said he was going to file a complaint.

On September 6, 2013, Chief Snyder told Officer Jody Petersen about Mr. Mihailovici's interaction with Officer Baker. He also purportedly told Officer Petersen that Mr. Mihailovici had a concealed weapons permit that was revoked. The record does not state why Chief Snyder made this comment or how he knew about the revoked permit. Later that day, Officer Petersen was on the side of the road for a traffic stop. What happened next is heavily disputed between the parties.

Officer Petersen claims that Mr. Mihailovici drove up fast behind her, screeched to a halt, exited his vehicle, and aggressively approached her. She then commanded him to: (1) get his hand out of his pocket, (2) stop reaching for his fanny pack, and (3) place his hands above his head. After he failed to comply with each of these requests, Officer Petersen called for backup and ordered Mr. Mihailovici to place his hands on his car. He complied with this last command, and Officer Petersen approached and handcuffed him. Chief Snyder eventually arrived and loaded Mr. Mihailovici into the patrol car. This is the first time, Defendants claim, that Mr. Mihailovici mentioned that the reason he approached Officer Petersen was to find out how to make a complaint against Officer Baker. At the police station, Mr. Mihailovici told Officer Petersen that his shoulder was bothering him. Officer Petersen removed his handcuffs and cuffed one of his hands to a bench. Mr. Mihailovici remained at the police station until his paperwork was completed, after which he was transferred to the Washington County Jail.

Mr. Mihailovici's account of the events is significantly different. According to Mr. Mihailovici, he pulled up behind Officer Petersen and waited for her to complete the traffic stop. After she was finished, she and Mr. Mihailovici approached each other and engaged in a

conversation. Mr. Mihailovici told her that he thought she was Chief Snyder and that he wanted to make a complaint against Officer Baker. Eventually, Officer Petersen radioed Chief Snyder and told him that Mr. Mihailovici wanted to make a complaint. Chief Snyder responded and told Officer Petersen to arrest Mr. Mihailovici. Officer Petersen commanded Mr. Mihailovici to put his hands up, and Mr. Mihailovici raised his hands and turned around to walk away. Then, Officer Petersen came up behind Mr. Mihailovici, yanked and twisted his arm, and handcuffed him. Eventually, Officer Snyder arrived and, as he was loading Mr. Mihailovici into the patrol car, slammed Mr. Mihailovici's shoulder into the door frame. At the police station, Mr. Mihailovici asked to go the hospital, but instead the officers kept him at the station for over two hours. When he was finally taken to the Washington County Jail, he was quickly processed and released to go to the hospital.

Mr. Mihailovici was eventually charged and convicted of Interfering with a Peace Officer under Oregon Revised Statute § 162.247. He brought this civil suit in September 2015, alleging that he suffered injuries to his shoulder as a result of the encounter.

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," for example, the court should enter summary judgment in favor of the opposing party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Id.* at 323. Once that burden is satisfied, the burden shifts to the non-moving

party to demonstrate, through the production of evidence listed in Rule 56(c)(1), that there remains a "genuine issue for trial." *Id.* at 324.

The non-moving party may not rely upon the pleading allegations. *See Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P. 56(e)). Additionally, a "summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Indeed, a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1997). "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). All reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Mr. Mihailovici brings three claims against Defendants: (1) a § 1983 claim for excessive use of force against Chief Snyder and Officer Petersen, (2) a § 1983 claim for retaliation in violation of the First Amendment against Chief Snyder, and (3) a state-law tort claim for battery against Chief Snyder, Officer Petersen, and the City of North Plains. He also seeks punitive damages against Chief Snyder and North Plains.

**I.     § 1983 Excessive Force Claim**

   A. *Merits of Excessive Force Claim*

Mr. Mihailovici first claims that Officer Petersen and Chief Snyder used excessive force in violation of the Fourth Amendment when they arrested him and failed to release him for medical attention following the arrest. A § 1983 claim for excessive force is analyzed under the framework outlined in *Graham v. Connor*, 490 U.S. 386 (1989). This analysis "requires balancing the 'nature and quality of the intrusion' on a person's liberty with the 'countervailing governmental interests at stake' to determine whether the use of force was objectively reasonable under the circumstances." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (quoting *Graham*, 490 U.S. at 396). The relevant question to ask is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. Relevant factors in this reasonableness inquiry include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

At summary judgment, a court considers whether the evidence, reviewed in the light most favorable to the nonmoving party, "could support a finding of excessive force." *Smith*, 394 F.3d at 701. But, because the excessive force inquiry "nearly always requires a jury to sift through disputed factual contentions," summary judgment "in excessive force cases should be granted sparingly." *Id.* (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)). Put differently, summary judgment in these cases is usually inappropriate because they "almost always turn on a jury's credibility determinations." *Id.*

Here, Mr. Mihailovici claims the officers used excessive force when they handcuffed and place him in the back of the patrol car. In his declaration, Mr. Mihailovici states: "Officer Petersen yanked and twisted my right arm down, without warning, to handcuff me. It hurt immediately, and I told her so." Then, when being loaded into the patrol car, Mr. Mihailovici asserts that Chief Snyder "smashed [his] shoulder into the door frame." Mr. Mihailovici also provides medical records to show that he was diagnosed with a torn rotator cuff on the day of the encounter. According to Officer Peterson, however, she "did not use any force in handcuffing" Mr. Mihailovici. Likewise, Chief Snyder asserts that he "did not use any force to assist [Mr. Mihailovici] into the patrol car." Both officers maintain that Mr. Mihailovici did not complain about his shoulder or mention being in any pain until he was at the police station.

These statements from the parties clearly demonstrate a factual dispute over the amount of force used to effectuate Mr. Mihailovici's arrest. There is also disagreement over when Mr. Mihailovici first mentioned he was in pain: on the scene or at the police station. Resolving these disputes necessarily requires a credibility determination by a jury. Thus, the only remaining issue is whether the evidence, viewed in the light most favorable to Mr. Mihailovici, could support a jury finding of excessive force.

In the Ninth Circuit, it is "well-established that overly tight handcuffing can constitute excessive force." *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004). In *Palmer v. Sanderson*, for example, the plaintiff brought an excessive force claim against an officer who "jerked [him] out of his car, pushed him against it, frisked him, handcuffed him, and pushed him into the back seat of the patrol car with such force that [the plaintiff] fell over sideways." 9 F.3d 1433, 1434 (9th Cir. 1993). The plaintiff claimed that the handcuffs were so tight that he suffered pain and bruises that lasted for several weeks. *Id.* at 1436. Similarly, in *Wall*, the officer

handcuffed the plaintiff's hands "extremely tight behind his back, picked [him] up by his handcuffed arms and threw [him] upside down and head first into the patrol car." 364 F.3d at 1109 (internal quotation marks omitted). The plaintiff sought damages for injuries to his wrist. *Id.* at 1110. In both cases, the Ninth Circuit concluded that the plaintiffs' evidence, if credited, would establish that the officers used excessive force when making the arrests, thereby precluding summary judgment. *Id.* at 1112; *Palmer*, 9 F.3d at 1436.

Although the facts of this case are somewhat different, *Wall* and *Palmer* suggest that summary judgment is inappropriate on Mr. Mihailovici's excessive force claim. Indeed, if a claim that tight handcuffs resulting in pain and bruises is enough to proceed past summary judgment, then a rough application of handcuffs that resulted in a torn rotator cuff is surely sufficient as well. Moreover, consideration of the factors from *Graham* supports this conclusion. The crime – at least based on these facts – is not terribly serious, and if Mr. Mihailovici's account is true, he did not pose a threat of safety to others or actively resist arrest during the encounter. Thus, viewed in the light most favorable to Mr. Mihailovici, there is sufficient evidence for a jury to conclude that Officer Petersen and Chief Snyder applied excessive force when they handcuffed Mr. Mihailovici and placed him in the patrol car.[1]

Mr. Mihailovici also appears to base his excessive force claim on the officers' alleged failure to release him for medical attention for 2-3 hours after his arrest. Even if failure to release an individual for medical attention for this amount of time qualifies as excessive force under the

---

[1] To be clear, Mr. Mihailovici's conviction in the state criminal case does not mean I must credit the officers' account of the facts leading up the arrest as true. The jury's conviction in the criminal case simply means that there was enough evidence to find Mr. Mihailovici guilty of interfering with a peace officer under ORS § 162.247. A person violates ORS § 162.247 if he "(a) Intentionally acts in a manner that prevents, or attempts to prevent, a peace officer or parole and probation officer from performing the lawful duties of the officer with regards to another person; or (b) Refuses to obey a lawful order by the peace officer or parole and probation officer." Neither of these elements requires that a person pose a threat to the immediate safety of the officers or others, or actively resist arrest. Likewise, Mr. Mihailovici's failure to follow Officer Petersen's three orders, which was established by the jury in the criminal case, does not necessarily prove the force was reasonable. Thus, there remains a genuine dispute of material fact for trial.

7 – OPINION AND ORDER

Fourth Amendment, Mr. Mihailovici admits that he refused Chief Snyder's offer to call a paramedic shortly after arriving at the police station. And Mr. Mihailovici presents no evidence that receiving care from a paramedic, as opposed to being released to go to the hospital, was unreasonable under the circumstances. Thus, even though the other bases for Mr. Mihailovici's excessive force claim involve genuine disputes of material fact, this one does not.

Mr. Mihailovici has provided sufficient evidence to demonstrate there is a genuine issue of material fact in regards to the amount of force used to effectuate his arrest. He has not shown, however, that the officers' failure to release him for medical attention involves a genuine dispute of material fact. Thus, moving forward, Mr. Mihailovici may pursue his § 1983 excessive force claim on the basis of the force used to effectuate the arrest but not the failure to release him for medical attention.

B. *Qualified Immunity*

Even though there is a genuine dispute of material fact as to whether the officers' actions qualify as excessive, the officers may still be entitled to qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, S. Ct. 2088, 2093 (2012). Failing to establish either requirement will prevent recovery from the official. *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016). Here, there is a genuine dispute of material fact as to whether the officers used excessive force in violation of the Fourth Amendment. Thus, the only way the officers are entitled to qualified immunity is by demonstrating that the right at issue had not been clearly established at the time of the arrest.

In order for a constitutional right to be clearly established, "its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). This does not mean that an official is entitled to qualified immunity "unless the very action in question has previously been held unlawful," *id.*, but the "existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate," *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citations omitted) (internal quotation marks omitted); *Acosta v. City of Costa Mesa*, 718 F.3d 800, 824 (9th Cir. 2013). "[T]he use of excessive force by officers in effecting an arrest was clearly proscribed by the Fourth Amendment at least as early as 1985." *Palmer*, 9 F.3d at 1436 (referring to *Tennessee v. Garner*, 471 U.S. 1 (1985)). Moreover, it is "well-established that overly tight handcuffing can constitute excessive force." *Wall*, 364 F.3d at 1112.

In this case, I must credit Mr. Mihailovici's evidence when determining whether the right at issue was clearly established. *See id.* (crediting the plaintiff's evidence when undertaking the qualified immunity analysis); *Palmer*, 9 F.3d at 1436 (same). Doing so means that Mr. Mihailovici was not aggressive, threatening, or evasive during his encounter with Officer Petersen and Chief Snyder. It also means that the officers effectuated the arrest with such force that it resulted in a torn rotator cuff on Mr. Mihailovici's right shoulder. Even though this is not exactly the same as overly-tight handcuffing, the facts are similar enough to put the officers on notice that such conduct is clearly proscribed. Thus, the officers are not entitled to qualified immunity, and I DENY summary judgment in Defendants' favor on Mr. Mihailovici's excessive force claim.

## II. § 1983 Retaliation Claim

### A. *Merits of Retaliation Claim*

Mr. Mihailovici's second claim is that Chief Syder ordered his arrest in retaliation for his desire to make a complaint against Officer Baker in violation of the First Amendment. To demonstrate retaliation in violation of the First Amendment, an individual must prove (1) the defendant "took action that 'would chill or silence a person of ordinary firmness from future First Amendment activities,'" and (2) the defendant's "desire to cause the chilling effect was the but-for cause of the defendant's action." *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006).[2] A plaintiff does not need to demonstrate that her speech was actually inhibited by the defendant's action; just that the defendant intended the chilling effect to occur. *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

A plaintiff does not need to demonstrate the absence of probable cause to bring a claim for retaliation. *Skoog*, 469 F.3d at 1232, 1235. That said, probable cause "undoubtedly ha[s] high probative force" in determining whether the causation requirement of the plaintiff's retaliation claim has been satisfied. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008). In *Skoog*, for example, the Ninth Circuit found that a First Amendment retaliation claim survived summary judgment where there was "barely enough evidence" to find probable cause but "strong evidence of a retaliatory motive." *Id.* But, in *Dietrich*, the Ninth Circuit affirmed the district court's grant of summary judgment because there was "very strong evidence of probable cause and very weak evidence of a retaliatory motive." *Id.* Accordingly, although probable cause is not

---

[2] In *Mendoncino Environmental Center v. Mendoncino County*, the Ninth Circuit stated that the desire to chill a plaintiff's speech must have been "a substantial motivating factor in [the defendant's] conduct." 192 F.3d 1283, 1300 (9th Cir. 1999). In any event, whether the requirement is "but-for cause" or a "substantial and motivating factor," the outcome in this case is the same.

dispositive, it is still important when determining whether a plaintiff has satisfied the causation requirement of his First Amendment retaliation claim.

Here, Defendants appear to concede that on Mr. Mihailovici's version of the facts, Officer Snyder took action that would chill the First Amendment speech of an individual with ordinary firmness. The only dispute between the parties is whether Mr. Mihailovici is able to establish the second requirement of his retaliation claim – that Officer Snyder intended to chill Mr. Mihailovici's speech and that such intent was the cause of his alleged decision to order Mr. Mihailovici's arrest.

Defendants make several arguments as to why Mr. Mihailovici fails to satisfy the causation requirement of his retaliation claim. Principally, they argue that, like in *Dietrich*, this case involves strong evidence of probable cause and weak evidence of retaliatory motive. The evidence of probable cause in this case is, indeed, rather strong. *See id.* (finding strong evidence of probable cause where the plaintiff admitted to driving past a police barricade and was convicted in municipal court). A jury convicted Mr. Mihailovici of interfering with a peace officer and even unanimously agreed that he had failed to obey all three of Officer Petersen's orders, giving rise to the charge. Thus, regardless of what Mr. Mihailovici claims about the event, probable cause for his arrest has already been conclusively established.

In *Dietrich*, the Ninth Circuit does not explain what it means by "weak evidence of retaliatory motive." *Id.* Weak evidence may mean evidence that, if credited as true, would not readily give rise to an inference of retaliation. Or it may mean evidence that lacks credibility or strength when compared to contradictory evidence from an opposing party. Given the specific procedural posture of *Dietrich*, I find that the Ninth Circuit must have meant the former. In *Dietrich*, the Ninth Circuit reviewed the district court's grant of summary judgment in the

defendants' favor on the plaintiff's First Amendment retaliation claim. *Id.* at 896. At summary judgment, a court must view the facts in a light most favorable to the non-moving party. *See id.* As such, the Ninth Circuit found the evidence of retaliatory motive was weak because there was "no evidence" the defendants read the newspaper article that was the basis of their alleged retaliation. It appears, therefore, that evidence is weak for purposes of the balancing exercise in *Dietrich* only if when credited, the evidence does not create a strong or significant inference of retaliatory motive.

In light of this finding, evidence of retaliatory motive in this case is also strong. Mr. Mihailovici claims he spoke to Chief Snyder regarding Officer Baker between the dates of August 27, 2013, and September 5, 2013. During this encounter, Chief Snyder told Mr. Mihailovici, "If you do not behave, I will nail your ass." Then, on September 6, 2013, Mr. Mihailovici claims he heard Chief Snyder tell Officer Petersen to arrest him after finding out that he wanted to make a complaint against Officer Baker. Even though Defendants offer evidence to dispute and undermine these claims, Mr. Mihailovici's testimony, when credited as true, creates a strong inference of retaliatory motive.

As a result, this case involves a scenario that is different from *Dietrich*. Here, there is strong evidence of probable cause but also strong evidence of retaliatory motive. And the Ninth Circuit did not address how to conduct its balancing exercise when both evidence of probable cause and retaliatory motive are strong. Accordingly, I must examine the reason why probable cause affects a plaintiff's ability to satisfy the causation element of a First Amendment retaliation claim in the first place.

In *Hartman v. Moore*, the Supreme Court held that in order to plead and prove a claim for retaliatory prosecution, a plaintiff must establish as an element of the claim an absence of

probable cause. 547 U.S. 250, 265-66 (2006). The Ninth Circuit subsequently limited *Hartman*, holding that its decision only applied to "a particular subcategory of retaliation claims: retaliatory prosecution claims." *Skoog*, 469 F.3d at 1233. Relying on *Hartman*, the Ninth Circuit reasoned that the "complexity of causation" in retaliatory prosecution claims "justified and necessitated the additional requirement" in such claims. *Id.* at 1234. But, in ordinary retaliation claims, "a right exists to be free of police action for which retaliation is a but-for cause even if probable cause exists for that action." *Id.* at 1235. Accordingly, it appears the presence of probable cause is simply an indicator in cases otherwise lacking evidence of retaliation that the adverse action was not caused by a retaliatory motive.

As noted above, Mr. Mihailovici's evidence, when credited as true, establishes a strong inference of retaliatory motive. There is also strong evidence of probable cause. Thus, the case pits evidence of an established element (i.e., retaliatory motive) of Mr. Mihailovici's retaliation claim against conclusive facts (i.e., probable cause) undercutting that element. In such a contest, summary judgment is never appropriate. Rather, there is a genuine dispute of material fact as to what specifically caused Chief Snyder's adverse conduct. Thus, absent qualified immunity, Defendants are not entitled to summary judgment in their favor on Mr. Mihailovici's First Amendment retaliation claim.

    B. *Qualified Immunity*

Even though Mr. Mihailovici's retaliation claim survives summary judgment on the merits, Chief Snyder is entitled to qualified immunity. Similar to the analysis under Mr. Mihailovici's excessive force claim, whether Chief Snyder is entitled to qualified immunity under the retaliation claim depends on whether the right at issue has been clearly established.

In *Skoog*, the Ninth Circuit found that "the right of an individual to be free of police action motivated by retaliatory animus but for which there was probable cause" had not been clearly established. *Id.* at 1235. But the court also noted that the right would become clearly established in the Circuit "at some future point." *Id.* In 2012, the Supreme Court noted that it had never held that there was a "specific right to be free from retaliatory arrest that is otherwise supported by probable cause." *Reichle*, 132 S. Ct. at 2094. Relying on *Reichle*, the Ninth Circuit held again – this time in 2013 – that this right was not clearly established. *Acosta*, 718 F.3d at 824-25. Two other Ninth Circuit cases from 2013, however, reached different conclusions. *See Ford v. City of Yakima*, 706 F.3d 1188, 1191 (9th Cir. 2013) ("Ford has put forth facts sufficient to allege a violation of his clearly established First Amendment right to be free from police action motivated by retaliatory animus, even if probable cause existed for that action."); *Martin v. Naval Criminal Investigative Serv.*, 539 F. App'x 830, 832 (9th Cir. 2013) ("Our precedent has long provided notice to law enforcement officers that it is unlawful to use their authority to retaliate against individuals for their protected speech, even if probable cause exists for the challenged law enforcement conduct." (citations omitted) (internal quotation marks omitted)).

This series of 2013 Ninth Circuit opinions merely demonstrates that the right to be free from retaliatory arrest otherwise supported by probable cause was not clearly established at the time of Mr. Mihailovici's arrest. To be clearly established, the constitutional question confronted by the official must be "beyond debate." *Plumhoff*, 134 S. Ct. at 2023. One can hardly argue that the question is "beyond debate" when not even the Ninth Circuit has been able to settle on one position. Indeed, the order in which *Ford*, *Acosta*, and *Martin* were decided in 2013 – February, May, and September respectively – is likely to leave district courts, let alone law enforcement

officials, feeling rather whiplashed.³ As such, I GRANT summary judgment in Defendants' favor on Mr. Mihailovici's retaliation claim on the basis of qualified immunity.

### III. State-law Battery Claim

#### A. *Tort Claims Notice*

Under Oregon law, an individual bringing a tort action against a public body or officer must provide proper notice. Or. Rev. Stat. § 30.275(1) (2017). A plaintiff may satisfy this notice requirement by either formal notice under ORS § 30.275(4) or actual notice under ORS § 30.275(6). *Lane v. Hood River Cnty.*, No. 08-CV-428-ST, 2009 WL 1662990, at *6 (D. Or. June 11, 2009). Actual notice "is a communication that (1) allows the recipient to acquire 'actual knowledge of the time, place and circumstances' that give rise to the specific claim or claims that the plaintiff ultimately asserts; and (2) would lead a reasonable person to conclude that the plaintiff has a general intent to assert *a* claim." *Flug v. Univ. of Or.*, 73 P.3d 917, 924 (Or. 2003).

Here, Defendants contend that Mr. Mihailovici failed to provide proper notice of his battery claim against the officers and North Plains. But Mr. Mihailovici asserts that he gave actual notice of his intent to sue when he spoke to Ms. Debry, the city manager, and Mr. Elsner, the city attorney, about his arrest. He also claims that letters he received from Mr. Elsner support this assertion. The letters, however, merely reference Mr. Mihailovici's behavior at City Hall and his desire to complain about the police department. Regardless, there is no evidence that refutes Mr. Mihailovici's testimony that he spoke with Ms. Debry in person and Mr. Elsner over the phone about his claims and intent to sue. Furthermore, Defendants do not raise any additional arguments as to why these conversations would be deficient for purposes of giving actual notice.

---

³ *Martin* is an unpublished opinion that was decided on September 5, 2013 – one day before Mr. Mihailovici's arrest. *See* 9th Cir. R. 36-3 ("Unpublished dispositions and order of this Court are not precedent . . . ."). Thus, there is no realistic expectation that *Martin* clearly established the right prior to Mr. Mihailovici's arrest.

15 – OPINION AND ORDER

Thus, construed in his favor, Mr. Mihailovici has presented a genuine issue of material fact as to whether he provided notice as required under ORS § 30.275.[4]

B.  *Merits of Battery Claim*

In *Woods v. Gutierrez*, this Court relied on its finding that the force was not excessive under the plaintiff's § 1983 claim to conclude that the defendants' actions did not constitute assault and battery under state law. No. 3:11-CV-01082-BR, 2012 WL 6203170, at *11 (D. Or. Dec. 12, 2012) ("[B]ecause the Court already has concluded the force used against Plaintiff was not excessive and, therefore, was not any more force than was necessary under the circumstances, the Court also concludes . . . that Defendants are entitled to summary judgment as to Plaintiff's claims for assault and battery."). In this case, there is a genuine issue of material fact as to whether the force used by Chief Snyder and Officer Petersen was excessive. Thus, just as summary judgment is improper for Mr. Mihailovici's excessive force claim, it is also improper for his state-law battery claim. I DENY summary judgment in Defendants' favor on Mr. Mihailovici's state-law battery claim.

**IV.  Punitive Damages**

Finally, Mr. Mihailovici seeks punitive damages in connection with his claims against Chief Snyder and North Plains. Because Chief Snyder is entitled to qualified immunity on Mr. Mihailovici's retaliation claim, he obviously cannot recover punitive damages in connection with that claim. Thus, the only issue is whether Mr. Mihailovici has failed to provide sufficient evidence to warrant punitive damages in connection with his remaining claims.

---

[4] Mr. Mihailovici also claims he provided formal notice in the form of a letter sent to Mr. Elsner. Even though Mr. Mihailovici did not produce a copy of that letter, whether he sent it is still a disputed issue of material fact inappropriate for disposition at summary judgment.

A plaintiff seeking relief under § 1983 can receive punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). An official's individual liability for compensatory damages for an excessive use of force claim "largely overlaps the standard for punitive damages to the extent that both look to [the official's] reckless or callous disregard or indifference to [the plaintiff's] constitutional rights." *Larez v. City of Los Angeles*, 946 F.2d 630, 649 (9th Cir. 1991).

Here, Defendants argue that Mr. Mihailovici is not entitled to punitive damages because he has not proven a violation to his constitutional rights. As explained above, however, there is a genuine dispute of material fact regarding whether the officers used excessive force in violation of the Fourth Amendment during the arrest. Defendants also argue that there is no evidence that Chief Snyder had an evil motive or demonstrated callous indifference. In his declaration, however, Mr. Mihailovici relates statements from Chief Snyder that, if true, would appear to warrant punitive damages (i.e., "And if you do not behave, I will nail your ass," and "I warned you before. Now you are in a lot of trouble."). This evidence is sufficiently probative of evil intent or callous indifference to get past summary judgment. Thus, I DENY summary judgment in Defendants' favor on the issue of punitive damages, at least in regard to the § 1983 excessive force and state-law battery claims.

//
//
//
//
//

## CONCLUSION

For the reasons stated above, I GRANT in part and DENY in part Defendants' Motion for Summary Judgment [65]. I GRANT summary judgment in Defendants' favor on Mr. Mihailovici's § 1983 retaliation claim on the basis of qualified immunity, but I DENY summary judgment on Mr. Mihailovici's § 1983 excessive force and state-law battery claims.

IT IS SO ORDERED.

DATED this __25th__ day of April, 2017.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge